**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **ANTHONY RYAN MORRIS and** | § | |
| **BRENDA MORRIS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **EP-13-CV-132-KC** |
| **v.** | § | |
| | § | |
| **CHASE HOME FINANCE, LLC,** | § | |
| **EMC MORTGAGE CORPORATION,** | § | |
| **and BANK OF AMERICA,** | § | |
| | § | |
| **Defendants**. | § | |
| | § | |

**ORDER**

On this day, the Court considered the Motion for Summary Judgment (the "Motion")

filed by Defendant JPMorgan Chase Bank, N.A. ("JPMC"),[1] ECF No. 18, in the above-captioned

case (the "Case").  For the reasons set forth herein, the Motion is **GRANTED.**

**I.      BACKGROUND**

**A.      Procedural History**

The Court addressed the background of this matter in its Order granting in part and

denying in part Defendants' motion to dismiss. *See* Order, ECF No. 13. In brief, Plaintiffs

Anthony Ryan Morris and Brenda Morris (singly or collectively "Plaintiffs") brought suit

challenging JPMC's foreclosure and sale of their home.[2]  The Court dismissed Plaintiffs' claims

---

[1] JPMC is the successor by merger to the named Defendant, Chase Home Finance LLC.

[2] Though the record is not explicit on this point, it appears that Plaintiffs still occupy the home. *See* Mot. 9
("Plaintiffs still occupy the property despite the fact that they are not making payments.").

for wrongful foreclosure and violation of the Real Estate Settlement Procedures Act because they failed to state a claim upon which relief could be granted. *Id*. at 9-12. The Court held that Plaintiffs adequately pleaded a claim for breach of contract against JPMC, but not against the other two defendants. *Id*. at 5-9, 12.  The breach of contract claim against JPMC is therefore the sole remaining claim in the Case. JPMC now moves for summary judgment on that claim.

In support of the Motion, JPMC has filed a list of Proposed Undisputed Facts, ECF No. 18-1 ("Proposed Facts"), and an appendix of supporting materials attached to the Declaration of Alicia Brooks, ECF No. 18-2 ("Defendant's Appendix"). Plaintiffs have filed a response to the Motion, ECF No. 19, ("Response"), to which they attached their own affidavit ("Plaintiffs' Affidavit"). Plaintiffs separately filed a second affidavit with an attached appendix of supporting materials, ECF No. 20 ("Plaintiffs' Appendix"). JPMC has filed a reply to the Response, ECF No. 21 ("Reply").  Finally, Plaintiffs have filed responses to the Proposed Facts, ECF No. 26 ("Response to Proposed Facts").

### B.    Factual Background

The Court here recounts the facts relevant to its disposition of the Motion. All facts listed here are undisputed except as otherwise noted.[3]

---

[3] Plaintiffs' Response did not comply with the Court's Standing Order Regarding Motions for Summary Judgment ("Standing Order") in that it did not admit or deny the Proposed Facts and did not enumerate the genuine disputes of material fact to be tried. The Court therefore ordered Plaintiffs to submit a response that complied with the Standing Order. *See* Order, ECF No. 25.

Despite the Court's admonition, the Response to Proposed Facts that Plaintiffs have now submitted still does not comply with the Standing Order. Though Plaintiffs now generally admit or deny each Proposed Fact, they fail to cite specific points in the record to support their claims that certain facts are disputed, as required by the Standing Order. Instead, they simply cite their affidavit as a whole. *See* Resp. to Proposed Facts ¶¶ 20-24, 29, 31-34, 38; Standing Order ¶ 3. Moreover, after stating that certain Proposed Facts are disputed, Plaintiffs often add a gloss demonstrating that they do not truly dispute the Proposed Fact, or at best leaving obscure exactly what they dispute. *Compare* Proposed Facts ¶¶ 7, 10, 15,  21-24, 29, 31-34, 38 *with* Resp. to Proposed Facts ¶¶ 7, 10, 15,  21-24, 29, 31-34, 38. Plaintiffs respond to one Proposed Fact with a *non sequitur* that neither admits nor denies it. *Compare* Proposed Facts ¶ 11 *with* Resp. to Proposed Facts ¶ 11.  Finally, Plaintiffs have simply not submitted the list required by the Standing Order specifying the genuine issues of material fact to be tried.

On or about October 26, 2006, Plaintiffs took out a home mortgage loan (the "Mortgage") from Home123 Corporation ("Home 123") in the amount of $450,000 to purchase real property located at 1032 Calle Milagro Drive in El Paso, Texas (the "Property"). Proposed Facts ¶¶ 1-2; Resp. to Proposed Facts ¶¶ 1-2. One or both Plaintiffs executed various loan documents pertinent to the Motion, including a promissory note payable to Home123 (the "Note"), a deed of trust (the "Deed of Trust") (collectively the "Loan Agreements"), and a waiver of escrow (the "Waiver of Escrow"). Proposed Facts ¶¶ 1-4; Resp. to Proposed Facts ¶¶ 1-4.

The Note required Plaintiffs to make monthly payments on the first day of every month to Home123 in the amount of $3,031.74. Proposed Facts ¶ 6; Resp. to Proposed Facts ¶ 6. The Note specifies that if Plaintiffs "do not pay the full amount of each monthly payment on the date it is due, [they] will be in default." Defs.' App. 5. The parties agree that the failure to timely make any monthly payment would constitute a breach of the Deed of Trust and a default of the Note. Proposed Facts ¶ 8-10; Resp. to Proposed Facts ¶ 8-10.

Three other provisions of the Deed of Trust are relevant to the Court's disposition of the Motion.

---

Federal Rule of Civil Procedure 56(e) provides that when a party "fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the Court may:
1) give an opportunity . . .  to properly address the fact;
2) consider the fact undisputed for purposes of the motion;
3) grant summary judgment if the motion and supporting materials – including facts considered undisputed – show that the movant is entitled to it; or
4) issue any other appropriate order."
Fed R. Civ P. 56(e).

The Court has already given Plaintiffs an opportunity to properly address the Proposed Facts, but Plaintiffs have not availed themselves of it. Though the Court may consider such improperly addressed facts undisputed for the purposes of the Motion, the Court will nonetheless endeavor to construe Plaintiffs' responses in the light most favorable to them. The Court will, however, consider as undisputed those Proposed Facts that Plaintiffs only facially "dispute," do not properly address, and do not appear to truly contest, and that are supported by evidence in the record.

First, the section entitled "Payment of Principal, Interest, Escrow Items, Prepayment

Charges, and Late Charges" reads in pertinent part

> Borrower shall pay when due the principal of, and interest on, the debt evidenced by the
> Note and any prepayment charges and late charges due under the Note. Borrower shall
> also pay funds for Escrow Items pursuant to Section 3 . . . . Lender may accept any
> payment or partial payment insufficient to bring the loan current . . . but Lender is not
> obligated to apply such payments at the time such payments are accepted . . . . Lender
> may hold such funds unapplied funds until Borrower makes payment to bring the loan
> current.

Defs.' App. 10, § 1.

Second, the section entitled "Application of Payments or Proceeds" (the "Application

Clause") reads in pertinent part

> Except as otherwise described in this Section 2, all payments accepted and applied by
> Lender shall be applied in the following order of priority: (a) interest due under the Note;
> (b) principal due under the note; (c) amounts due under Section 3 [concerning payments
> for Escrow Items and any escrow shortage]. Such payments shall be applied to each
> Periodic Payment in the order in which it became due. Any remaining amounts shall be
> applied first to late charges, second to any other amounts due under this Security
> Instrument, and then to reduce the principal balance of the Note.
>
> If Lender received a payment from Borrower for a delinquent periodic payment which
> includes a sufficient amount to pay any late charge due, the payment may be applied to
> the delinquent payment and the late charge. If more than one Periodic Payment is
> outstanding, Lender may apply any payment received from Borrower to the repayment of
> the Periodic Payments if, and to the extent that, each payment can be paid in full [].

Defs.' App. 11, § 2.

Third, the section entitled "Funds for Escrow Items" requires Plaintiffs to make

additional monthly payments to Home123 to cover Home123's payment of certain "Escrow

Items," such as property taxes and homeowners insurance. However, Home123 waived this

requirement by the Waiver of Escrow. Proposed Facts ¶ 4, 7; Resp. to Proposed Facts ¶ 4, 7.

The Waiver of Escrow required Plaintiffs to timely pay the Escrow Items themselves, and

to notify Home123 of such payment within two weeks of Home123's written request to provide

4

such notification. Proposed Facts ¶ 4, 7; Resp. to Proposed Facts ¶ 4, 7; Defs.' App. 30. The Waiver of Escrow provided that Home123 could re-establish an escrow account and require Plaintiffs to make periodic payments for Escrow Items if any of the following occurred: a) Plaintiffs failed to timely pay any of the Escrow Items; b) Plaintiffs failed to timely notify Home123 of their payment of Escrow Items; c) Home123 advanced Plaintiffs funds to pay any portion of the Escrow Items; or d) Plaintiffs were otherwise in default under the terms of any of the loan documents. Proposed Facts ¶ 11-12; Resp. to Proposed Facts ¶ 11-12; Defs.' App. 30.

At some point after the above instruments were executed, JPMC became the servicer of the Note and the Deed of Trust. Proposed Facts ¶ 5; Resp. to Proposed Facts ¶ 5. JPMC apparently thereby stepped into the shoes of Home123 for all purposes relevant to the Motion.

In 2008, Plaintiffs failed to pay taxes owed on the Property, thereby breaching the Waiver of Escrow. Proposed Facts ¶ 13; Resp. to Proposed Facts ¶ 13. Though JPMC would have been entitled to revoke the Waiver of Escrow at that time, it allowed Plaintiffs to pay the relevant penalties and interest and left the Waiver of Escrow in place. Proposed Facts ¶ 14; Resp. to Proposed Facts ¶ 14. Plaintiffs fell behind on their periodic payments from February 2009 through October 2009,[4] and again breached the Waiver of Escrow by failing to pay taxes owed on the property in November and December 2009. Proposed Facts ¶¶ 15-18; Resp. to Proposed Facts ¶¶ 15-18. As Plaintiffs, per the terms of the Waiver of Escrow, had not been paying JPMC for Escrow Items, JPMC's payment of the taxes on Plaintiffs' behalf resulted in a substantial escrow shortage. Proposed Facts ¶ 19; Resp. to Proposed Facts ¶ 19.  Plaintiffs' two January 2010 payments were sufficient to cover the principal, interest, and late fees that were due at that

---

[4] The parties dispute the extent to which Plaintiffs were behind on their periodic payments at that time. The Court need not resolve this dispute to rule on the Motion.

time, as well as some of the escrow shortage, leaving the escrow shortage at $32,212.34. Proposed Facts ¶ 20; Resp. to Proposed Facts ¶ 20.

JPMC claims that after it received the January payments, it established an escrow account in accordance with the terms of the Deed of Trust.[5] Proposed Facts ¶ 21; Defs.' App. 58. In support of this claim, JPMC has filed a document addressed to Plaintiffs entitled "Annual Escrow Account Statement" dated December 29, 2009. JPMC does not aver that it sent this statement to Plaintiffs, and the Court can find no evidence in the record indicating that JPMC sent the statement. The statement notifies Plaintiffs that they would henceforth be required to make additional monthly payments of $1,068.08 for Escrow Items. Proposed Facts ¶¶ 21-22; Defs.' App. 58. The statement also instructed Plaintiffs to make twelve monthly payments of $3,069.93 to cover the escrow shortage, which at the time was $36,839.16.[6] Proposed Facts ¶ 23; Defs.' App. 58. As described on the account statement, the escrow shortage comprised both the funds already disbursed by JPMC for Escrow Items as well as an increase to the cushion for Plaintiffs' escrow account. Defs.' App. 59. According to the statement, Plaintiffs' total monthly payment was therefore to be $7,187.75 beginning in March 2010. Defs.' App. 58.

Plaintiffs dispute the Proposed Facts concerning the establishment of the escrow account, claiming that they "were never notified of the escrow account or the new payment amount . . . . [h]ad the Defendant notified the Plaintiffs to pay the amount in full they would have done so . . . . Plaintiffs did not know the payment increased." Resp. to Proposed Facts ¶¶ 21-23. Plaintiffs do

---

[5] Though Defendants state that the escrow account was established after the January payments were received, it appears to have been established by December 29, 2009, the date of the escrow account statement. *See* Proposed Facts ¶¶ 20-21; Defs' App. 58.

[6] Plaintiffs could opt out of making the listed default monthly payment for the escrow shortage by paying all or part of the amount due in a lump sum, and then making lower monthly payments.

not appear to dispute whether an escrow account was in fact established in accordance with the Deed of Trust, nor whether JPMC expected them to make increased monthly payments. *See id.*

The parties agree that Plaintiffs did not pay $7,187.75 per month beginning in March 2010. Instead, having brought the account current by making payments of $3,000 and $1,000 in January, Plaintiffs made no payment in February, paid $3,500 per month in March and April, and made no payment in May. *See* Proposed Facts ¶¶ 24-25; Resp. to Proposed Facts ¶¶ 24-25; Pls.' App. 29.

On May 10, 2010, JPMC generated another escrow account statement. Like the previous statement, it is addressed to Plaintiffs, but JPMC does not claim that it was sent, and no evidence in the record indicates that it was sent. *See* Proposed Facts ¶¶ 32-34; Defs.' App. 62. The statement informed Plaintiffs that as of July 2010, their payments into the escrow account and for the escrow shortage would be adjusted. Defs.' App. 62. In addition to their usual monthly payment of principal and interest in the amount of $3031.74, they were to increase their escrow account deposit to $1,226.64 and decrease their escrow shortage payment to $2,125.12, for a total monthly payment of $6,383.50. Proposed Facts ¶¶ 32-34; Defs.' App. 62.

Plaintiffs deny the Proposed Facts related to the May 10 escrow account statement. Resp. to Proposed Facts ¶¶ 32-34. They state "[t]he Plaintiff [sic] stood ready to pay the entire amount of escrow shortage and tried to communicate with the Defendant to find out an amount." *Id.* ¶ 32.

On June 9, 2010, JPMC sent Plaintiffs a Notice of Intent to Accelerate and Demand for Payment (the "June 9 Notice") stating that Plaintiffs were in default. *Id.* ¶ 26; Resp. to Proposed Facts ¶ 26; Defs.' App. 69. The June 9 Notice stated that as of June 1, the record date of the Notice, Plaintiffs had missed the April, May, and June payments of $7,187.75 each, for a total of

$21,563.25.[7] *Id.* As set forth on the June 9 Notice, subtracting from that amount $2,870.97 that was in a suspense account, and $21.70 for "Corporate advances," left $18,670.58 as the amount required to cure the default. *Id.* The June 9 Notice warned Plaintiffs that "you may owe the amount of any other payments and late charges which may fall due after the date of this letter . . . . As a word of caution, payment of the amount noted above will not be accepted once the default has increased, so it is absolutely essential that you call for an updated quote when preparing to remit the amount past due." Defs.' App. 69.  Plaintiffs received this letter on June 14. Pls.' Aff. 8.

In response to the June 9 Notice, Plaintiffs sent JPMC a check for $18,670.58 (the "June 18 Payment"), the total amount demanded in the letter. Proposed Facts ¶ 27; Resp. to Proposed Facts ¶ 27. In a letter enclosing the June 18 Payment, Anthony Morris wrote "[p]lease apply to the outstanding escrow balance. This should reduce balance on escrow, additional payments forthcoming should be applied to loan principal balance." Pls.' App. 25.

JPMC did not – at least initially – apply the June 18 Payment to the outstanding escrow balance as Plaintiffs requested. Instead, it claims that it applied $14,527.09 to the past due payments of principal, interest, escrow, and late charges for April and May 2010. Proposed Facts ¶ 27; Defs.' App. 40. Plaintiffs disclaim any knowledge of how the June 18 Payment was applied to their account. Resp. to Proposed Facts ¶ 27. The parties agree that because a late charge came due after the June 9 Notice was sent but before Plaintiffs made the June 18 Payment, the amount remaining from the June 18 Payment was insufficient to make payment that was overdue for the

---

[7] Though Plaintiffs made a payment of $3,500 in April, this payment was, as far as the Court can tell, applied to the outstanding March payment. The March payment was outstanding because the payment Plaintiffs made in March had been applied to the missing February payment. Though Plaintiffs made two more payments of $3,500 on June 2 and June 8, these were not reflected on the Notice because they were made after the date the Notice was generated. *See* Defs.' App. 39-40, 69; Pls.' App. 29-30. In any event, Plaintiffs do not challenge Defendants' calculation of the amounts due as stated in the June 9 Notice.

month of June.[8] Proposed Facts ¶ 28; Resp. to Proposed Facts ¶ 28. Nevertheless, the parties also agree that Plaintiffs cured their breach by making the June 18 Payment. *See* Am. Compl. 4; Reply 4.

On July 13, 2010, JPMC sent Plaintiffs a letter explaining the amounts then owed for escrow. Proposed Facts ¶ 35; Resp. to Proposed Facts ¶ 35. The letter stated that the escrow shortage was $25,501.46 – the same amount listed on the May 10 escrow account statement, thus indicating that none of the June 18 Payment had been applied to the escrow shortage as of that date. Defs. App. 67.

The parties agree that on July 14, 2010, JPMC reversed the previous four payments, applied a portion of the funds to the escrow balance, and then reapplied the remaining funds to the outstanding payments in accordance with the Deed of Trust. Proposed Facts ¶ 30; Resp. to Proposed Facts ¶ 30. JPMC represents that it did so at Plaintiffs' request, despite the fact that the "Deed of Trust does not permit a payment to be applied in that manner when the loan is in default." Mot. 4-5. It is not clear whether JPMC refers to the request in the letter accompanying the June 18 Payment, or a later request of which there is no evidence in the record.[9] JPMC claims that after the reapplication, Plaintiffs had an escrow shortage of $15,242.60. Proposed Facts ¶ 31; Defs.' App. 56. Plaintiffs dispute this Proposed Fact, stating that "this was never communicated to Plaintiffs." Proposed Facts ¶ 32.

---

[8] It is difficult to reconcile Plaintiffs' denial of any knowledge as to how the funds from the June 18 Payment were applied with their admission that insufficient funds remained from that payment to make the payment that was due for the month of June due to the intervening late charge. *See* Resp. to Proposed Facts ¶¶ 27-28.

[9] JPMC represents that "Plaintiffs paid the delinquent amount, but then requested that it be applied to escrow rather than to cure their default," thereby indicating that the payment and the request were not contemporaneous. Mot. 4. However, the record does not reflect any such requests between when Plaintiffs sent the June 18 Payment and when JPMC reversed and reapplied the payments in mid-July. Defs.' App. 40-41, 56.

Thereafter, from July 2010 through January 4, 2011 – the date of the foreclosure sale – Plaintiffs made only the following payments: $3,500 in July, $3,500 in August, none in September, and $3,500 in October. Proposed Facts ¶ 36; Resp. to Proposed Facts ¶ 36; Pls.' App. 29-30.  Plaintiffs claim they made an additional payment of $3,500 in December 2010, which JPMC disputes. *See* Pls.' App. 29-30; Mot. 5 n.1. These payments were less than the required monthly payment of $4,258.38, which does not include any amount to repay the escrow shortage, or $6,383.50 which includes the amount required to repay the escrow shortage.

On August 30, 2010, JPMC sent Plaintiffs a second Notice of Intent to Accelerate and Demand for Payment, by which it demanded that Plaintiffs remit all past due payments to cure their default. Proposed Facts ¶ 37; Resp. to Proposed Facts ¶ 37. The notice stated that the total amount due at that time to cure the default was $10,033.23. Defs.' App. 76. That amount comprised missed payments of $6,383.50 for July and August 2010 and $454.77 in late charges, less $7.70 in corporate advances and a $3,180.84 suspense balance. Defs.' App. 76.

JPMC claims that Plaintiffs did not cure that default, but instead further breached the Loan Agreements by making only two payments over the next five months in the insufficient amount of $3,500 (namely the above-referenced October payment and the disputed December payment). Proposed Facts ¶ 38; Defs.' App. 41-43. Plaintiffs deny that they were in default by stating "Plaintiffs made a number of attempts to contact and communicate with the Defendant and never received a response as to what was actually owed; the Plaintiff disputes that they were in default." Resp. to Proposed Facts ¶ 38. Plaintiffs cite their affidavit as a whole in support of this claim, such that it is not clear what if any summary judgment evidence supports their contention that they were not in default.

10

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in

favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (citations omitted). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23.

**B.     Breach of Contract**

In pertinent part, Plaintiffs allege in their First Amended Complaint that:

[JPMC] refused and continues to refuse to account for how the [June 18 Payment] was applied to [their] obligations or if it was applied at all.

. . . .

The Plaintiffs were not in default of the promissory note, the deed of trust, or any other contracts or agreements with any of the Defendants. Among [sic] with regular monthly mortgage payments, the Plaintiffs sent $18,670 to [JPMC] which was improperly credited or not credited at all to the Plaintiffs['] loan account. The nonjudicial foreclosure conducted by the Defendants agents in January of 2011 was a breach of the contract.

. . . .

[JPMC] also violated Paragraph 2 under the heading "UNIFORM COVENANTS" found on page 4 of the Deed of Trust [the "Application Clause"].

12

Am. Compl. ¶¶ 6, 14, 15.

Because this is a diversity case, the Court applies state substantive law. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do not dispute that Texas law applies.

Under Texas law, "the elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) resulting damages to the plaintiff." *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App. 2010) (citations omitted). The parties do not dispute that the Mortgage was a valid contract, but they dispute the other three elements.

### 1. Performance or tendered performance by the plaintiff

JPMC argues that Plaintiffs variously breached the Waiver of Escrow, the Deed of Trust, and the Note by failing to timely pay taxes, failing to repay the funds JPMC paid on their behalf for Escrow Items, failing to timely make payments, and failing to increase their monthly payments to include deposits into the escrow account. Mot. 7; Reply 4. JPMC argues that it is therefore "entitled to summary judgment because Plaintiffs breached the contract and are barred from maintaining a claim for breach of contract." Mot. 7.

Plaintiffs respond that they complied with the Deed of Trust. Resp. 2-5. In support of this proposition, Plaintiffs make several arguments which bear no apparent connection to their compliance with the Deed of Trust, and, moreover, are otherwise irrelevant to the disposition of the Motion. The Court addresses them below.

In its Order granting in part and denying in part the motion to dismiss, the Court found that Plaintiffs adequately pleaded that they tendered performance because they alleged that they

"were not in default of the promissory note, the deed of trust, or any other contracts or agreements with any of the Defendants." *See* Order 7, Am. Compl. ¶ 14. The Court further noted that the documents attached to the Amended Complaint were consistent with Plaintiffs' claims because

> Defendants note that in January 2010, the Mortgage was "current." Even though Plaintiffs only made additional Mortgage payments that year in March, April, June, July, August, October, and December, Plaintiffs may still not have been in default at any time in 2010. This is because the Mortgage contains prepayment and cure provisions. The Mortgage notes that the required monthly payment is $3,031.74. But Plaintiffs' payments, after January 2010, were for $3,500—well in excess of this amount. Therefore it is possible that Plaintiffs were prepaying their Mortgage throughout 2010 and therefore there were no outstanding payments that year. Moreover, even if Plaintiffs did owe money on the Mortgage at some point in 2010, they may have cured any deficiency with their June 18, 2010, payment of $18,670.58. Accordingly, because of these provisions, the Court cannot conclude at this stage of the proceedings that Plaintiffs failed to perform by not making the required Mortgage payments in 2010.

Order 7 (citations omitted).

For the following reasons, the Court finds that the undisputed summary judgment evidence demonstrates that Plaintiffs failed to perform under the terms of the Loan Agreements.

As the Court noted in its Order, Plaintiffs' account was current as of January 2010. Proposed Facts ¶ 20; Resp. to Proposed Facts ¶ 20. However, at that time Plaintiffs had an escrow shortage of at least $32,212.34 due to their nonpayment of taxes which had not yet been reduced to an obligation to repay JPMC. Proposed Facts ¶¶ 17-20; Resp. to Proposed Facts ¶¶ 17-20. JPMC then established an escrow account and required Plaintiffs to begin making monthly deposits to the escrow account and paying down the escrow shortage as of their March 2010 payment. Proposed Facts ¶¶ 21-23; Defs.' App. 10-11. Though Plaintiffs purport to dispute those Proposed Facts, at bottom, Plaintiffs appear to contend merely that they were not notified of the new payment. They do not dispute whether the escrow account was established in

14

accordance with the Deed of Trust. *See* Resp. to Proposed Facts ¶¶ 21-23. To the extent Plaintiffs

do dispute that point, they have not properly supported that claim with a citation to the record,

and in any event, the Waiver of Escrow and the Deed of Trust clearly allow JPMC to establish an

escrow account and require payments for Escrow Items and repayments of any escrow shortage.

*See* Defs.' App 11-12, 30; Proposed Facts ¶¶ 21-23; Resp. to Proposed Facts ¶¶ 21-23. The Court

therefore considers it undisputed that JPMC established an escrow account in accordance with

the Deed of Trust.

Plaintiffs never made the required payment of $7,187.75 from March through June 2010,

and instead made only sporadic, late payments of $3,500. Pls.' App. 29-30. They were therefore

in breach of the terms of the Loan Agreements. Proposed Facts ¶ 8-10; Resp. to Proposed Facts ¶

8-10. Upon receiving the June 9 Notice, Plaintiffs cured this breach by making the June 18

Payment. *See* Am. Compl. 4; Reply 4. But after curing that default, Plaintiffs continued to

underpay and skip monthly payments. Plaintiffs made, at most, four payments of $3,500 from

July 2010 through January 4, 2011. Proposed Facts ¶ 36; Resp. to Proposed Facts ¶ 36; Pls.'

App. 29-30. They thereby again breached the terms of the Mortgage, and did not cure that breach

before the foreclosure sale. Proposed Facts ¶ 38; Pls.' App. 29-30. Though Plaintiffs assert that

they were not in default, they do not meaningfully cite the summary judgment record in support

of their claim. *See* Resp. to Proposed Facts ¶ 38. Contrary to Plaintiffs' unsupported assertion,

Plaintiffs' Affidavit and Appendix indisputably indicate that they made, at most, four payments

between July 2010 and January 2011. Proposed Facts ¶ 36; Resp. to Proposed Facts ¶ 36; Pls.'

App. 30; Pls.' Aff. 8. Moreover – to the extent Plaintiffs' protestation that they were previously

unaware of the increased monthly payment is of any consequence – they were unquestionably

aware of the increased payment after receiving the June 9 Notice, which reflected missed monthly payments in the same amounts demanded in the December 29, 2009 escrow account statement.[10] *See* Proposed Facts ¶ 26; Resp. to Proposed Facts ¶ 26; Defs.' App. 69. The Court therefore accepts as undisputed that Plaintiffs defaulted again after June 2010, and remained in default until JPMC sold the Property at a foreclosure sale on January 4, 2011. *See* Pls.' App. 44.

Even assuming *arguendo* that JPMC failed to properly apply the June 18 Payment to Plaintiffs' account, Plaintiffs were indisputably in breach after June 2010. That is, had JPMC simply applied the June 18 Payment to the escrow shortage as Plaintiffs requested, it would have reduced but not eliminated the escrow shortage. Plaintiffs admitted as much in their letter enclosing the June 18 Payment. *See* Pls.' App. 25 (noting that the June 18 Payment "should reduce balance on escrow."). Plaintiffs would then still have been in arrears for their missed payments and underpayments of principal and interest between March and May, which were, in reality, resolved by the application of the June 18 Payment. Proposed Facts ¶ 27. Plaintiffs acknowledged that point as well when they stated in the letter accompanying the June 18 Payment that "additional payments forthcoming should be applied to loan principal balance." Pls.' App. 25. Moreover, even if the June 18 Payment had resolved all of Plaintiffs' then-existing obligations for overdue payments and the escrow shortage, their sporadic payments of $3,500

---

[10] There is also evidence indicating that Plaintiffs became aware of the increased monthly payment at an earlier time. Plaintiffs state in their affidavit "[w]e made 10 payments of $3500 each in 2010 because the additional charge of $3000 would have been double charging us for escrow." Pls' Aff. 8. That statement appears to indicate that Plaintiffs were aware of the "additional charge of $3000" at the time they were making the $3500 payments, i.e., throughout the course of 2010. The Court will nonetheless accept as true Plaintiffs' averment that they did not receive the escrow account statements and were therefore not aware of the increased payment until June 14, 2010.

In that regard, the Court further notes that it is difficult to square Plaintiffs' statement that they "made 10 payments of $3500 each in 2010 because the additional charge of $3000 would have been double charging us for escrow" with their claim that they "never refused to pay." Pls.' Aff. 9.

after June 18 were still less than the required monthly payment of $4,258.38 for principal, interest, any applicable late charges, and deposits into the escrow account.

In sum, it is undisputed that Plaintiffs did not timely make payments that were due, thereby breaching the Deed of Trust and defaulting under the Note. Proposed Facts ¶¶ 8-10, 38; Resp. to Proposed Facts ¶¶ 8-10; Pls.' App. 29-30. Though Plaintiffs have made "conclusory allegations" and "unsubstantiated assertions" to the effect that they were not in breach, they have not supported their position with citations to the record sufficient to raise a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c); *Liquid Air*, 37 F.3d at 1075 (citations omitted).

"It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). Under the "well-established principles of Texas contract law" exemplified by *Dobbins*, materially breaching the terms of the Mortgage by failing to make timely payments "would normally [with an exception not relevant here] prevent [Plaintiffs] from maintaining a breach-of-contract claim." *Thomas v. EMC Mortgage*, 499 F. App'x 337, 341, No. 12-10143, 2012 WL 5984943 (5th Cir. Nov. 30, 2012) (unpublished).

Federal district courts applying Texas contract law have invoked that "well-established rule" to bar actions for breach of contract by borrowers who were themselves in breach. *See Manns-Rice v. Chase Home Fin., LLC*, No. 4:11-CV-425-A, 2012 WL 2674551, at *5 (N.D. Tex. July 5, 2012) (holding that where the "summary judgment record shows that plaintiff admitted she became delinquent in the payment of her mortgage loan payments . . . . [her] failure to perform her contractual obligations warrants summary judgment on her breach of contract claim on that basis alone"); *Chavez v. Wells Fargo Bank, N.A.*, No. 4:11-VC-864-Y, 2013 WL

3762894, at *4 (N.D. Tex. July 9, 2013) (dismissing borrower's breach of contract claim because borrower's allegations demonstrated that he was in default under the deed of trust); *Williams v. Fed. Nat'l Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 1853170, at *2 (N.D. Tex. May 21, 2012) (granting lender summary judgment when "Plaintiffs present no evidence to contradict either their [not responded-to requests for] admissions or the notices of default that show that, at the time of foreclosure, Plaintiffs owed a significant balance due on their mortgage and were in default."). The Court therefore holds that JPMC is likewise entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs were themselves in default.

As noted, Plaintiffs raise a number of off-point or otherwise ineffectual arguments against summary judgment, which the Court now briefly addresses.

First, Plaintiffs repeatedly assert that they were unaware of the increased monthly payments as first demanded in the December 29, 2009 escrow account statement. *See* Resp. to Proposed Facts ¶¶ 21-25. Plaintiffs do not articulate why this alleged lack of notice matters. To the extent Plaintiffs now claim that JPMC breached the Loan Agreements by failing to provide them notice of the increased payment, they did not plead such a failure to notify claim in their Amended Complaint; the only notice-related claim they asserted in the Amended Complaint concerned Defendants' alleged violation of the Texas Property Code, which claim the Court dismissed. *See* Am. Compl. 4-5; Order 11-12. Such a new improper notice claim is not relevant to JPMC's allegedly improper application of the June 18 Payment, which is the only remaining claim in the Case. *See* Order 8 ("Plaintiffs' breach of contract claim centers on [JPMC's] alleged failure to correctly apply the [June 18 Payment]."). In any event, Plaintiffs have not articulated how, if at all, this alleged lack of notice breached the Loan Agreements, whether the breach was

material, or why it would obviate their own undisputed breach of the Loan Agreements after June 2010. As such, this argument poses no obstacle to granting JPMC summary judgment as to Plaintiffs' nonperformance.

Second, Plaintiffs argue that they "cured the note . . . . in accordance with the demand [and] the Deed of Trust" by submitting the June 18 Payment. Resp. 4. Plaintiffs are correct that they cured their then-existing default by making the June 18 Payment, but that is irrelevant to their subsequent default, which was the basis for the foreclosure. *See* August 30, 2010 Notice of Intent to Accelerate and Demand for Payment, Defs.' App. 79 (stating that past due sums demanded are for missed July and August 2010 payments); *see also* Reply 4.

Third, Plaintiffs generally argue that they found it difficult or impossible to obtain from JPMC information they desired about their account status. Resp. 2-4. Specifically, Plaintiffs state that "the accounting and application of the [June 18 Payment] was never provided to the Plaintiffs such that they had any idea what they owed." *Id*. at 4. Plaintiffs also state that "it is for a jury to decide whether the refusal of the Defendant to speak with the Plaintiff about the escrow matter was a breach of the contract as the facts are clearly disputed." *Id*. at 3-4. Plaintiffs have not attempted to demonstrate with citation to the record that JPMC was required to provide them an "accounting and application of the [June 18 Payment]," or any other information about their account status. Any failure to provide such information or accounting is therefore of no moment with regard to the Motion.

Finally, the Court cannot discern the substance of the argument in the Response captioned "The Plaintiffs Did Not Receive the Notice of Trustees sale and Notice of Acceleration Required by Section 51.002 of the Texas Property Code." That argument consists of the caption,

citations to two cases, and the conclusion "[t]his is a clear breach of the deed of trust contract. The Plaintiff [sic] at all time [sic] complied with the Deed of Trust." Resp. 4-5. The Court has already disposed of Plaintiffs' notice claims based on the Texas Property Code in its Order granting in part the Motion to Dismiss. *See* Order 11-12. Moreover, as noted above and articulated in the Order, Plaintiffs did not plead a breach of contract on the basis of a failure to give notice, so this argument is off-point.[11] *See* Order 8.

### 2.    Defendant's Breach and Damages

As discussed, to prevail on a claim for breach of contract, Plaintiffs must ultimately prove that they performed or tendered performance. *See Rice,* 324 S.W.3d at 666. "It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." *Chavez*, 2013 WL 3762894, at *4 (citing *Dobbins*, 785 S.W.2d at 378). The Court holds, for the reasons explained above, that the undisputed summary judgment evidence shows that Plaintiffs failed to perform or tender performance under the Loan Agreements. If the nonmoving party on a motion for summary judgment fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23. As Plaintiffs have failed to establish the element of performance or tendered performance, which is essential to their case, the Court must grant the Motion for Summary Judgment. Accordingly, the Court

---

[11] The Court notes that Plaintiffs might have been excused from performing under the Loan Agreements, and their own default mooted, if JPMC breached the Loan Agreements first. Such a breach could have consisted of the misapplication of payments that Plaintiffs pleaded, or a different, earlier breach such as a failure to give notice of the establishment of the escrow account and the increased monthly payment (that is, if such failure to give notice occurred and was in fact a breach). *See Levels v. Merlino*, --- F. Supp. 2d. ----, No. 3-11-cv-3434-M-BN, 2013 WL 4733993, at *20 (N.D. Tex. Sept. 3, 2013) (denying summary judgment to lender because "neither party addresses the timing of the others' alleged breaches. Timing is important because Defendants are excused from performance only if Plaintiffs breached the contract before Defendants' alleged breach."). Here, however, Plaintiffs did not argue that they were excused from performance by a prior breach, and in any event, they have not put forth any evidence that JPMC breached the Loan Agreements at any time, whether by misapplying the June 18 Payment or otherwise, let alone evidence that JPMC breached first.

need not address the other elements of a breach of contract claim, namely, whether JPMC

breached the Loan Agreements and Plaintiffs suffered damages.

**III.     CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 18, is

**GRANTED.**

**SO ORDERED.**

SIGNED this 7th  day of February, 2014.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE